CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 7 2020

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JASON W.,                              )
                                       )
          Plaintiff                    ) Civil Action No. 7:19-CV-352
                                       )
v.                                     )
                                       )
ANDREW SAUL, Commissioner of           )
Social Security,                       ) By:  Michael F. Urbanski
                                       ) Chief United States District Judge
                                       )
          Defendant                    )

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on August 17, 2020, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Jason W. ("Jason") has filed objections to the report and this matter is now ripe for the court's consideration.

## I. Background

Jason filed applications for disability insurance benefits and supplemental security income on January 19, 2016. He alleged disability beginning on December 15, 2014 and was 24 years old at the alleged onset date. He alleges disability based on back pain with lumbar degenerative disc disease and radiculopathy, an impairment involving his hands, and depression. The administrative law judge ("ALJ") found that his back impairment was severe

but his other impairments were non-severe. The ALJ further found that Jason can do light work with additional limitations of standing and walking no more than four hours total in an eight-hour workday; only occasionally climbing ladders, ropes, and scaffolds, stooping, kneeling, crouching, and crawling; and frequently climbing ramps and stairs, and balancing. He should avoid concentrated exposure to wetness, vibration, and hazards such as machinery and unprotected heights. The ALJ found that Jason could not return to his past relevant work but could do other work in the economy. Thus, the ALJ found him not disabled. The Appeals Council denied Jason's request for review, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Jason has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report

be specific and particularized, as the statute directs the district court to review only 'those

portions of the report or specified proposed findings or recommendations to which objection

is made.'") (emphasis in original). Such general objections "have the same effect as a failure to

object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827,

829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154

("[T]he statute does not require the judge to review an issue de novo if no objections are filed.

. . .").

Rehashing arguments raised before the magistrate judge does not comply with the

requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

objections that simply reiterate arguments raised before the magistrate judge are considered to

be general objections to the entirety of the report and recommendation. See Veney v. Astrue,

539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely
> reformatting an earlier brief as an objection "mak[es] the initial reference to the
> magistrate useless. The functions of the district court are effectively duplicated
> as both the magistrate and the district court perform identical tasks. This
> duplication of time and effort wastes judicial resources rather than saving them,
> and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of
> Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will

not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated

as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions.

Rather, judicial review of disability cases is limited to determining whether substantial evidence

supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Jason makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he concluded that substantial evidence supported the ALJ's determination that Jason's arthralgias and depression were not severe impairments; (2) The magistrate judge erred when he concluded that the ALJ properly assessed Jason's impairments and properly

---

[2] Detailed facts about Jason's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 22) and in the administrative transcript (ECF No. 9) and will not be repeated here.

assessed his residual functional capacity ("RFC"); and (3) The magistrate judge erred when he found that the ALJ correctly assessed Jason's subjective allegations of impairment.

## A. Severe Impairments

At Step 2 of the evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe," or a combination of impairments that is "severe." An impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). See also SSR 85-28 ("[A]n impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.")

Basic work activities include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(a). If an ailment is controlled by medication or treatment such that it does not cause work-related limitations, it is not considered severe. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986).

6

Jason asserts that his arthralgias and depression are severe impairments and the ALJ's determination to the contrary is not supported by substantial evidence. He claims that the ALJ ignored evidence that showed he had right L3 radiculopathy and that an MRI showed changes that were noted to possibly cause discogenic pain. However, the ALJ found that Jason's back pain with degenerative disc disease and lumbar radiculopathy were severe impairments. R. 18. Accordingly, there is no basis for this objection and it is **OVERRULED.**

Jason also asserts that the ALJ erred when he found that Jason's depression was not a severe impairment. He claims that the ALJ ignored evidence in the record that Jason was prescribed medication for depression that his providers indicated was a result of uncontrolled pain and that his medication has been changed several times and dosages increased in an effort to better control his depression. He contends that the changes in medication and increases in dosages are substantial evidence to support a finding that his depression imposes more than minimal limitations on his ability to perform work-related activities.

When the ALJ made his finding that Jason's depression was not a severe impairment, he considered the four broad areas of mental functioning set out in the regulations and listing of impairments: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 19-20. He cited to the medical and other evidence in the record in determining that Jason has no more than a "mild" limitation in any of the areas.

In his objections, Jason does not argue or cite evidence showing that he had more than a "mild" limitation in any of the areas. He argues only that because his medication regimen changed often and the dosages were increased, his depression must have caused more than

minimal limitations on his ability to work. The court finds that this objection is insufficient in light of the ALJ's detailed analysis of the record and his review of the evidence in the context of the areas of mental functioning. Therefore, Jason's objection to the magistrate judge's conclusion that the ALJ properly assessed the severity of Jason's mental impairment is **OVERRULED**.

**B. Residual Functional Capacity Assessment**

Jason objects that the magistrate judge erred in finding that he has the RFC to do light work with additional limitations and erred in finding that the ALJ conducted a proper function-by-function analysis of how his impairments limit his ability to work. He claims that the ALJ should have considered his inability to maintain a static work posture and his need to lie down during the day for pain relief.

Regarding the function-by-function analysis, the magistrate judge noted that in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit rejected a per se rule requiring remand when the ALJ did not perform an explicit function-by-function analysis. The Mascio court found that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where the ALJ's analysis otherwise frustrates meaningful review.

The magistrate judge further determined that Jason's case differs from Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016), where an ALJ found that a claimant had the severe impairments of narcolepsy and sleep apnea but failed to sufficiently address his symptoms when developing the RFC. In Jason's case, his alleged inability to maintain a static work posture and his need to lie down for four hours were subjective symptoms rather than severe

8

impairments recognized by the ALJ. The magistrate judge found that although the ALJ did not provide a function-by-function analysis, he did provide a detailed summary and analysis of Jason's medical records, testimony, and opinion evidence, and concluded that the alleged limiting effects of his impairments were not fully consistent with the objective evidence and other evidence in the record.

Jason contends that the magistrate judge ignored his argument that the ALJ did not address his difficulty maintaining a static work posture and need to lie down during the day. However, both the magistrate judge and the ALJ acknowledged that Jason testified that he can sit for only twenty minutes before needing to change positions and that he needs to lie down three to four times a day for twenty minutes at a time for pain relief. R. 22; ECF No. 22 at 8-13. The ALJ found that Jason's description of the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the objective medical evidence and other evidence in the record. R. 31. He pointed to the fact that Jason's course of treatment for back pain and lower extremity symptoms has been relatively conservative and that he is not a candidate for surgery. Id. The ALJ further discussed the objective evidence in the record, including MRI and CT imaging that showed relatively mild degenerative changes to Jason's lumbar spine, and two rounds of EMG/NCS testing on Jason's right lower extremity that produced conflicting results with one set of tests showing normal results and the other showing right L3 radiculopathy and left peroneal axonotmesis. Physical examination showed some positive findings of spinal tenderness, limited range of motion in the lumbar spine, antalgic gate, intermittent mild motor weakness in Jason's right leg, and intermittent sensory loss. R. 32. The ALJ determined that the RFC to do light work with additional limitations

9

accommodated Jason's objective abnormalities. Id. Thus the ALJ did not ignore Jason's allegation that he needed to lie down during the workday; rather the ALJ concluded that the claim was not entirely supported by the other evidence in the record.

Jason next argues that the magistrate judge built a logical bridge between the evidence and the ALJ finding that the ALJ did not himself build in the decision. In Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), the court observed that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence. Rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion." Id. Nor is it sufficient for the ALJ to simply recite medical evidence that he believes tends to discredit a claimant's testimony. Monroe, 826 F.3d at 189. He must provide a clear explanation of his reasons for discrediting a claimant's testimony "such that it will allow meaningful review of his decision." Id. at 190.

Jason argues that the ALJ did not build the "logical bridge" required by Monroe and Clifford because he failed to adequately consider Jason's testimony that he falls often and failed to explain how Jason's ability to drive short distances is inconsistent with his allegations regarding the limited use of his right leg.

Jason testified at the ALJ hearing that he comes close to falling two to three times per day and that he has actually fallen "quite a few" times. R. 60-61. If Jason fell as often as he testified that he did, he would not be able to do a job requiring him to stand or walk four hours per day. However, in discussing Jason's allegation that he falls often, the ALJ pointed out that the medical evidence showed little evidence of falls; Jason twice denied having falls

to his medical providers; and the record does not show that he received treatment for any fall-related injuries. R. 31. The ALJ found that Jason's testimony about falling is not consistent with the objective medical evidence in the record, which led him to conclude that Jason's symptoms are not as persistent as he claims. Based on the lack of consistency, the ALJ found that Jason is capable of working in a job that requires him to walk four hours per day. Thus, the ALJ did exactly what Monroe directs him to do by pointing to the evidence in the record that was inconsistent with Jason's testimony about repeated falls.[3]

Regarding his ability to drive, the ALJ stated that Jason's ability to drive, though limited, is not fully consistent with his allegation of disabling radicular symptoms in his right lower extremity. Jason is correct that the ALJ should have explained how his ability to drive short distances supports a conclusion that he can do light work but did not do so. However, this error is harmless because the ALJ cited a great deal of other evidence in the record that was inconsistent with Jason's allegations that his impairments are disabling. Thus, even without an explanation from the ALJ of how Jason's ability to drive short distances supports the conclusion that he can do light work with additional limitations, substantial evidence supports the conclusion.

---

[3] Jason also argues that that just because he did not report injuries from falls and denied having falls at two appointments does not mean that he was not experiencing falls. However, this argument asks the ALJ to accept a plaintiff's allegation of impairment at face value which the ALJ cannot do. Rather, if a claimant has a medically determinable impairment, the ALJ must evaluate the intensity and persistence of symptoms and the extent to which the symptoms limit the claimant's ability to perform work-related activities by examining "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3P, 2017 WL 5180304, at *4 (SSA 2017).

Jason also objects to the magistrate judge's finding that the ALJ's decision to give the opinions of the state agency medical consultants significant weight was supported by substantial evidence. The ALJ found that the opinions were well-supported and consistent with the evidence and found that the examiners noted and appropriately accounted for objective findings in the record. R. 32-33. Jason asserts that the ALJ and magistrate judge ignored the fact that after the state agency opinions were issued, EMG/NCS testing documented the existence of L3 radiculopathy or that the MRI of June 4, 2017 showed changes that were noted to be possible causes of discogenic pain.

However, the ALJ cited to the evidence in his opinion and noted that the EMG/NCS testing was inconsistent with earlier testing that showed no radiculopathy and also was inconsistent with the results of a later MRI. R. 32. The ALJ also cited the June 4, 2017 MRI when discussing the opinions of the state agency consultants and found that the evidence did not establish any record of medical worsening since the time of the agency opinions. R. 32-33, 515, 497, 692, 1016, 1102. Jason's assertion that the ALJ ignored relevant evidence is incorrect.

Finally, when making the RFC assessment, the ALJ gave little weight to the opinion of a treating physical therapist who stated in October 2015 that Jason was "unable to work secondary to dysfunction." R. 34. The ALJ stated that it was unclear whether the therapist was simply repeating Jason's subjective assessment or reaching a conclusion based on independent observations. Also, to the extent the therapist was making a medical statement, the ALJ found it to be not well explained or supported. Id.; R. 469-70. The magistrate judge found that the

12

assessment of the physical therapist's statement was part of the narrative discussion provided by the ALJ to support his RFC determination.

Jason argues that the statement by the physical therapist was "clearly a conclusion" rather than a repetition of a subjective assertion by Jason and the therapist "clearly opined plaintiff was unable to work secondary to dysfunction" because he further stated that Jason needed to continue therapy to try and achieve normal pre-morbid levels of functional capacity. This argument asks the court to re-weigh the evidence, which it cannot do. In addition, the argument does not address the ALJ's further conclusion that even if the therapist was stating that Jason was unable to work because of his impairments, the statement was not well-explained or supported.

For the reasons stated above, the court finds that the RFC assessment based on Jason's impairments is supported by substantial evidence. Jason's objections to the RFC finding are **OVERRULED**.

## C. Subjective Allegations of Impairment

Jason argues that the magistrate judge erred in concluding that substantial evidence supports the ALJ's determinations regarding Jason's subjective allegations of impairment. In particular, he argues that the ALJ failed to acknowledge the limited extent of Jason's activities and failed to explain how his ability to drive short distances shows that he could sustain work activity over the course of an eight-hour day. He argues that the magistrate judge should have applied <u>Brown v. Comm'r</u>, 873 F.3d 251 (4th Cir. 2017), to his case to find that remand was warranted.

In <u>Brown</u>, the Fourth Circuit remanded a case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping in support of the finding that the claimant was not disabled, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. <u>See</u> <u>also</u> <u>Clifford</u>, 227 F.3d at 872 (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.")

Jason's case is distinguishable from <u>Brown</u> because other than citing Jason's ability to drive short distances, the ALJ did not point to Jason's daily activities in determining his RFC. Rather, he relied on the medical evidence and other evidence in the record. Jason also argues that the ALJ cherry-picked the evidence and ignored evidence contrary to his RFC findings. However, Jason does not point to evidence ignored by the ALJ. To the extent he is arguing about the EMG/NCS testing discussed above, the ALJ explained why he decreased reliance on the testing. Regarding Jason's ability to drive, the ALJ did not explain how being able to drive short distances means that he can work an eight-hour day. However, even without such an explanation, the record contains substantial evidence to support the RFC determination that Jason can do light work with additional limitations.

Finally, Jason disputes the ALJ's comment that the course of treatment for his back pain and lower extremity symptoms has been relatively conservative. He states that although multiple providers have found Jason is not a candidate for surgical intervention, "the

14

numerous epidural steroid injections/facet joint injections, nerve blocks, and a trial of a spinal cord stimulator are not 'relatively conservative' as found by the ALJ." Pl's Objs., ECF No. 23 at 7.

Jason offers no support for the notion that the care he has received should not be considered "conservative treatment." The term "conservative treatment" is not defined in the regulations, but appears to encompass treatments that are less invasive than surgery. See Wilson v. Colvin, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. 2017) (describing chiropractic treatment, physical therapy, and epidural injections as "relatively conservative" treatments); Knorr v. Colvin, No. 6:15-cv-06702 (MAT), 2016 WL 4746252, *14 (W.D.N.Y (2015) (characterizing physical therapy, a TENS unit, medication, palliative injections, and chiropractic adjustments as conservative treatment); Cutcher v. Comm'r of Soc. Sec. Admin., No. 4:14-CV-1958, 2015 WL 5233244, *7 (N.D. Ohio 2015) (internal citation omitted) (finding radiofrequency ablation, medications, and physical therapy are conservative treatments); Sutton v. Astrue, No. 07-569-GMS, 2009 WL 2982879, *4 (D. Del. 2009) (reciting state agency physician's description of physical therapy, medications, and epidurals as conservative treatment).[4] The court finds no error in the ALJ's characterization of Jason's treatment as "conservative."

---

[4] See also definition of "conservative management" at https://www.spine-health.com/glossary/conservative-treatment (last viewed Sept. 13, 2020):

> Conservative management is an approach to treating back pain, neck pain and related spinal conditions utilizing non-surgical treatment options, such as physical therapy, medication and injections. In the context of treating back pain, conservative treatment is not the inverse of aggressive treatment. Most episodes of back pain can be treated through conservative care and a combination of several conservative treatments is often recommended to alleviate pain and rehabilitate the lower back. If the condition requires emergency care, conservative management may be passed up for surgical intervention. In general, surgery for lower back

Based on the foregoing, the court finds that the magistrate judge correctly concluded that the ALJ properly considered Jason's subjective allegations and Jason's objection to the finding is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered:   09-17-2020

Michael F. Urbanski
Chief United States District Judge

---

pain is considered only if conservative treatments fail and the pain persists for an extended period of time and limits the individual's ability to function.